## BAILEY *v.* PEARSON.

The act of 1846, in relation to married women, provides for ante-nuptial con-
tracts between the parties, by which the wife may hold property owned by her
at the time of the marriage, to her sole and separate use; and also provides
that a devise, conveyance or bequest of property may be made to a married
woman to her sole and separate use; and that she may hold, possess and en-
joy the same, free from the interference or control of her husband. The fourth
section is as follows:   " Married women in the cases aforesaid shall, in respect
to all such property, have the same rights, and possess and be entitled to the
same remedies, in her own name at law and in equity, and be liable to be sued
at law and in equity, upon any contract by them made, or any wrong by them
done, in respect to such property. And also upon any contracts by them
made or wrongs by them done before their marriage, in the same manner and
with the same effect as if they were unmarried." *Held,* that under the pro-
visions of this act, a *feme covert* cannot contract and be liable for debts gener-
ally, so as to subject her property to their payment, but that her contracts, to
be valid, must be confined to and be connected with the property itself.

Where a *feme covert,* holding property under the act of 1846, signed a promisso-
ry note during the coverture, which did not appear to have been given on ac-
count of any contract growing out of the property—*held,* that it could not be
recovered.

The liabilities that can be enforced against a *feme covert* under the fourth sec-
tion of this act, are: first, contracts made in regard to the property itself;
second, wrongs committed with the property; and third, contracts made by,
and causes of action existing against her, before her marriage, while sole.

ASSUMPSIT, upon a promissory note, dated January 11th,
1851, for the sum of $100, payable to the plaintiff or bear-
er, on demand, with interest annually, and signed by one
George Pearson and the defendant, Charlotte A. Pearson.
The promise to pay was joint and several.   The declaration
also contained a count for money had and received.

The defendant pleaded coverture.

The parties agreed that the defendant, Charlotte A. Pear-
son, was the mother of George Pearson, the other signer of
the note, and that the name of George was first upon the
note.   That at the date of the note Charlotte A. owned
real estate consisting of a farm on which she lived, and has
ever since owned it, of a value more than sufficient to satis-
fy the note, which was conveyed to her " to hold free from

the interference or control of her husband, according to the provisions of the second section of the act, approved July 10th, 1846, entitled ' An act in relation to married women.' "

The said Charlotte, at the date of the note, and long before, was, and ever since has been, the wife of Isaac Pearson, with whom she then lived and still lives and cohabits.

At the date of the note the said George Pearson was living in the family with his mother, the defendant.

It was agreed that judgment should be rendered for the plaintiff or defendant, according to the opinion of this court upon the foregoing statement of facts; and the case was transferred accordingly.

*Thompson & Chapman,* for the plaintiff.

By sections 12 to 18 inclusive, of chapter 158 of the Compiled Statutes, taken and construed in connection with section 3 of the same chapter, a married woman is clothed with new powers to hold property " to her sole and separate use, free from the interference or control of her husband." And by the adoption by her of these new powers and capacities, she subjects herself by the same provisions to new liabilities and relations.

Her sole liability to be sued upon her contracts and for her wrongs, and the liability of her property to respond to the breach of her contracts, and the damages arising upon her wrongs, are paramount to her rights and powers to pursue her remedies solely as a contracting party, and as a party pecuniarily injured. Otherwise the provisions referred to are a nullity, and the legislature utterly fails in the accomplishment of its object.

By these enactments the policy is completely changed in relation to married women and their husbands, and in respect to all persons contracting with the wife. A new legal being is created in her, a new party is made with full and absolute powers, so far as regards legal rights and legal obligations and liabilities.

The third section of the chapter cited, provides that " whenever any married woman shall be entitled to hold property in her own right to her separate use, she may make contracts, sue and be sued in her own name, may dispose of her property by will or otherwise, as if she were sole and unmarried." Herein there are no restrictions or limitations of the contracts she may make. Whatever contracts she may make are binding upon her, for a breach of which she may be sued. And what can be the object of a suit against her, if she cannot be sued with respect to her property ; that is, if her property cannot be held to respond the judgment recovered in any such suit? If her property cannot be held, no remedy is given against her, and the statute is a nullity.

It cannot be said that this section applies to cases of desertion, exclusively, by the husband. The language is too plain and strong to admit of any such narrow construction, standing as it now does in the statute, with the recent additional enactments.

Has section three any bearing upon the enactments of 1846 ? If there exists any doubt as to the object or intention of the legislature, from any ambiguity of language in section four of chapter 327 of the laws of 1846, being section fifteen of chapter 158 of the Compiled Statutes, so that the object and meaning cannot with any degree of certainty be determined, by the established rules respecting the interpretation of statutes, it must be construed with reference to other parts of the statute. This being so, then section fifteen is made clear by section three preceding and section seventeen following.

But it would seem that the language of section fifteen is of itself sufficient to make the intention of the legislature plain and unmistakable. This provision gives the married woman rights, and subjects her to liabilities in respect to her property, such as she holds by availing herself of the provisions of the section. It provides that married women

are " liable to be sued in law and in equity upon any contract by them made, or any wrong by them done in respect to such property." Now if it was meant that she could only be sued upon certain contracts growing out of that property, such language could not have been used. It would be absurd to say that she might be sued for wrongs by her done to, upon, respecting or relating to such property; that is, her own property. What wrong could she do to her own property for which she would be liable to be sued ?

If the words " in respect to " admit of a construction that makes her answerable to only certain special contracts, they must mean that she may be sued for wrongs that she may do to her own property ; for the words apply most strongly to the wrongs. It would seem doubtful whether they apply at all to the contracts. With this view of it, the wife would be the injured person, and also the person committing the injury. She would have to sue herself.

If it be said that the words " wrongs by them done in respect to such property " mean any act that may be done by her to such land or other property as would affect the rights of any persons having a remote interest therein, by reversion or otherwise in the same ; or acts done to such property as would flow or extend to another person's land or other property; such as burning bushes, building dams, or the erection of nuisances, then these words cannot extend or apply to contracts. Even if it be true that this statute enforces only particular contracts, such as respect her property, every contract she assumes to make must, by every presumption of law and fact, respect her property ; for by availing herself of the provisions of this law, she is presumed to know what it is, and how far her powers and liabilities go.

By section seventeen of the chapter it is provided that the husband may take administration of the deceased wife's estate, being such as she holds under these provisions, and that he shall hold such property, personal or real, saving his

estate by the curtesy, subject to the payment of all debts by her incurred, either before or after the marriage. This provision seems to be plain and absolute. Her property must pay all her debts. Does the death of the wife change the nature or character of her contracts or debts ? Does her death render her contracts any more valid, or equitable, or judicious, or make them to be " in respect to " her property, any more than they did before she deceased ?

Can it be said that the defendant had not the power to mortgage her property to secure the note in question ? Would she be bound by her mortgage ? Could the property pledged thereby be held, or is it to be said that such a transaction is not " in respect to her property ?" If she cannot execute a mortgage, what can she do ? And if it be said that this is not a debt, what debt can she make ? If our construction be not correct, then we think the legislature, in all its enactments in this behalf, has accomplished nothing.

*Felton,* for the defendant.

As a general rule, independent of the statute of 1846, married women are not liable to be sued on their contracts. It is not in accordance with the general policy of the law that married women should be liable upon their contracts made during coverture. A statute, therefore, should not be so construed as to extend that liability, unless it was plainly the intention of the legislature to extend it, nor to extend it beyond the plain intention of the legislature.

The statute of 1846, upon a fair construction of it, does not create the liability contended for by the plaintiff. It is the nature or subject of the contract that lays the foundation for a suit, as well as the nature or subject of the wrong; and both the contract and the wrong must have respect to the property ; and an action does not lie upon all contracts against a married woman having separate property, but only upon contracts in respect to such property ; as, for instance,

contracts for selling, leasing, mortgaging, cultivating and improving the property, and other similar contracts having the property for their subject. The words, "in the same manner and with the same effect," have reference to what precedes the period as well as to what follows it. A married woman having property as provided in the first and second sections, is liable to be sued upon any contract by her made "in respect to" such property, in the same manner and with the same effect as if she were unmarried. She is liable to be sued upon any contract by her made before marriage, "in the same manner and with the same effect," &c.

There is no language in the statute warranting the conclusion that the legislature could have intended that a *feme covert* should be liable to be sued upon any and every contract by her made, (whatever the subject of it,) and that the judgment should be satisfied only out of the property secured to her by the act. The proviso in the seventh section, so far as it provides for the "payment of all the debts incurred either before or after marriage," does not suppose contracts made by married women to create debts, unless the contracts are made in respect to the separate property; or if it does, there is good reason why property authorized to be set apart for the benefit of a married woman, should not, in her life time, be liable to be consumed in costs of suits upon all kinds of promises and contracts which she may be induced to make. There is good reason why she should be liable to be sued upon contracts made in respect to her separate property, because unless such contracts were binding, and created a good cause of action, she could not use such property, and manage and dispose of it to advantage.

Our construction is supported by the analogies of the common law. Although a *feme covert* has real estate to ever so large an amount, her reversionary interest dependent on her husband's life estate, however valuble, cannot be touched by her ante-nuptial creditors during coverture, and so with her choses in action remaining unclaimed by her

husband; but her choses in action, at least, are liable after her decease, for her debts contracted before marriage. Her creditors cannot reach such choses in action during coverture, either by suits against her alone, or against her and her husband. *Vanderheyden* v. *Mallory*, 1 Coms. 452; *Hapgood* v. *Harris*, 10 Ala. Rep. 291 ; 2 Kent's Com. 143, 4, 5.

The proviso in the seventh section may have been designed to conform to the common law rule that although a woman have an estate that will survive to her, and marry, the action against her alone is suspended during coverture, but, upon her death, the debt is to be paid by the administrator out of the estate. This proviso was not designed to enlarge the liability of the *feme covert*, neither does it aid in the construction of the fourth section.

The amount of property secured to the wife might be very small, and if liable to suits on all contracts, she might be vexed with suits to any amount, and by the proviso in the seventh section the costs of such suits would be debts to be satisfied, to the prejudice of her heirs, out of any real estate she might own, whether under the act of 1846, or otherwise, subject only to the husband's curtesy.

It seems obvious, from the phraseology of the fourth section, that the liability to suits upon contracts made, is only co-extensive with the liability to suits for wrongs done, and that the liability for wrongs done, is only for wrongs done in respect to the separate property ; such, for instance, as frauds in the sale, erecting dams, producing flowage, and creating other nuisances.

If the *feme covert* by force of the first part of the fourth section were liable to be sued on all contracts, it would have been superfluous to have added, in the last part of that section, the liability to be sued on contracts made before marriage.

If the liability had been intended to extend to all contracts, it would have been exceedingly easy for the legislature to have said so in plain, unequivocal language, and in

the absence of such language, it is to be presumed that no such intention existed, especially as the creating of such liability would have operated to the detriment of a class of persons, whom it is the general policy of the law, and was, doubtless, the particular policy of the legislature, to favor. 1 Black. Com. 445.

There seems to be no good reason why married women holding property under the first and second sections, should be liable to suits upon their contracts, any more than if the property were in the hands of trustees, for their use, except only that, having the exclusive possession, control and management of the property, there would be difficulty in managing and disposing of it, without an ability to make binding contracts, in respect to the property. There is no more occasion for the liability in the one case than the other, so far as the favoring of creditors is concerned.

The eighth section authorizes *femes covert* to place the property in the hands of trustees, and then the trustees, having the possession and direct management of, as well as the legal interest in, the property, can make all contracts in respect to it, necessary to its proper management and disposal, and from that moment the power of the wife to bind herself by her contracts ceases, by the terms of that section.

The third section of chapter 149 of the Revised Statutes has reference to married women who, from their condition, have the general power of acquiring and holding property to their separate use, and has no reference to women holding property under the act of 1846, by special title.

EASTMAN, J. By the third section of chapter 149 of the Revised Statutes, it is provided in general terms, that "whenever any married woman shall be entitled to hold property in her own right and to her separate use, she may make contracts, may sue and be sued in her own name, and may dispose of said property by will, or otherwise, as if she were sole and unmarried; and if she shall decease intestate,

Bailey *v*. Pearson.

her husband shall be excluded from any share in her said estate, and such estate shall be administered and inherited in the same manner as if she were sole and unmarried."

This section was passed in connection with others, which provided for the holding of property by married women who should be deserted by their husbands, and by the wives of aliens, and citizens of other states residing in this State separate from their husbands.

By the act of 1846, in relation to married women, laws of 1846, chapter 327, (Comp. Stat. ch. 158, §§ 12 to 18 inclusive,) provision is made for ante-nuptial contracts between the parties, by which the wife, after the marriage, may hold either the whole or any designated part of any interest in the real or personal estate or rights of action of which she was seized or possessed at the time of her marriage, to her sole and separate use, free from the control and interference of her husband. It is also provided that any devise, conveyance or bequest of property, real, personal, or mixed, may be made to any married woman, to be held by her without the intervention of a trustee, to her sole and separate use, free from the interference or control of her husband; and that she shall hold, possess and enjoy the same accordingly.

The fourth section of the act, (section 15 of the Compiled Statutes,) is as follows: " Married women in the cases aforesaid shall, in respect to all such property, have the same rights and possess and be entitled to the same remedies, in her own name, at law and in equity, and be liable to be sued at law and in equity, upon any contract by them made, or any wrong by them done, in respect to such property. And also upon any contract by them made, or wrongs by them done, before their marriage, in the same manner, and with the same effect, as if they were unmarried."

Under these provisions, the question is presented by this case whether a married woman, holding property in the manner set forth in the act of 1846, can contract and be

liable for debts generally, so as to subject her property to their payment, or whether the contracts which she may make, and which can be enforced, must be confined and have respect to the property itself?

The plaintiff contends that the general provisions in section 3, chapter 149 of the Revised Statutes, taken in connection with the act of 1846, must make her liable for all debts contracted during coverture, so far as her property, held separate from her husband, may be sufficient to pay them ; while the position of the defendant is, that the phrase " in respect to such property," in the fourth section of the act of 1846, limits the powers and liabilities of the *feme covert* to contracts directly applicable to the property itself, such as selling, leasing, mortgaging, cultivating and improving the same ; and so where the section speaks of wrongs done, it refers to frauds in the sale of such property, erecting dams, producing flowage, and creating other nuisances with the property itself.

We think that the decision of the question depends upon the construction to be put upon the phrase " in respect to such property." The section is peculiar and not altogether clear, and there is much in the argument of the plaintiff that might lead to the conclusion that the *feme covert* may make contracts generally, to the extent of rendering liable the property held under the provisions of the act. But after considerable consultation, our conclusion is that the true construction of the act must be that contended for by the defendant.

The provisions in the third section of chapter 149 of the Revised Statutes are not applicable to the act of 1846. Those provisions have reference to married women who live separate from their husbands, and who have been deserted by them, and to the other classes of married women spoken of in that chapter. The provisions of the Revised Statutes were intended to reach all cases in which married women could then hold separate property. The subsequent act of

1846, made additional provisions in regard to the rights of married women, and empowered them to hold property as therein specified, during the coverture, and while living with their husbands. The object of this act was to protect the wife and her interests, not to extend her liabilities. So far as the property itself is concerned, she may make contracts in regard to the same, which may act upon it, but cannot be liable generally for all contracts that she might assume to make during coverture. The law was not intended to be changed, except to the extent that the wife may hold property as set forth in the act, and may make contracts and incur liabilities connected with and growing out of that property, but not further. Her marital incapacities continue as before, except as to this property, and the acts and contracts connected therewith. The property held under the act of 1846, is liable, then, for all contracts made by the *feme covert* in regard to the property itself, and for all wrongs committed with it; and it is also liable, under the latter clause of the fourth section, for all debts and causes of action existing against her before her marriage, while sole.

The proviso in the seventh section, empowering the husband, after the decease of the wife, to hold such personal property, and all the interests of the wife in any real estate, saving his estate by the curtesy, " subject to the payment of all debts incurred by her, either before or after the marriage," does not necessarily conflict with the construction which we have put upon the act. The proviso undoubtedly includes the debts incurred with reference to the property, such as repairs to the buildings held by her, and all contracts which she may legally make relating thereto ; and also debts existing before the marriage, as specified in the latter clause of the fourth section. Whether it was intended to cover any other class of debts is not necessary here to inquire, as the investigation would at once suggest the question, as to what debts, independent of these statutes, a *feme covert* could incur.

Entertaining these views, there must be, according to the provisions of the case,

*Judgment for the defendant.*